CHRISTOPHER J. LANGLEY, State Bar No. 258851
chris@slclawoffice.com
Shioda Langley & Chang, LLP
1063 E. Las Tunas Dr.
San Gabriel, CA 91776
Telephone:(951)383-3388
Facsimile:(877) 483-4434

Proposed Attorneys for Debtor and Debtor-In Possession,
Viva Libre Restaurant Concepts Inc.,

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No: 8:25-bk-11186-TA_____ |
| Viva Libre Restaurant Concepts Inc., | Chapter 11 |
|     Debtor and<br>    Debtor-in-Possession. | NOTICE OF MOTION AND DEBTOR AND DEBTOR'S-IN-POSSESSION EMERGENCY MOTION FOR ORDER APPROVING BUDGET AND AUTHORIZING USE OF CASH COLLATERAL |
| | MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF GEORGE A. GALLARDO IN SUPPORT |

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES:**

PLEASE TAKE NOTICE that as soon thereafter as the matter may be heard, in Courtroom 5B of the above-entitled Court, located at 411 W. 4th St, Santa Ana, California, Debtor and Debtor-in-Possession Viva Libre Restaurant Concepts Inc. will request that this Court hear Debtor's Emergency Motion for Order Approving Budget and Authorizing Use of Cash Collateral (the "Motion").

//
//

1    PLEASE TAKE NOTICE that any parties oppose the Motion, given the emergency nature

2 of the relief requested, they may appear at the hearing and present oral opposition to the Motion.

3 The Debtor reserves the right to present reply evidence and argument at the hearing in response to

4 any opposition.

5

6 DATED: May 1, 2025                          SHIODA LANGLEY & CHANG LLP

7

8                                            By: /s/Chrstopher Langley
                                                CHRISTOPHER J. LANGLEY
9                                               Attorneys for Debtor-In-Possession,
                                                VIVA LIBRE RESTAURANT CONCEPTS
10                                              INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ORDER APPROVING BUDGET AND AUTHORIZING USE OF CASH COLLATERAL

# I.  INTRODUCTION

Debtor-in-Possession, Viva Libre Restaurant Concepts Inc. ( the "Debtor") files this Motion for entry of an order approving budget and authorizing the Debtor to use any "cash collateral," as the term "cash collateral" is defined in 11 U.S.C. § 363, of any secured claimants in this case (collectively, "Secured Claimants"), including but not limited to any cash collateral of the US Small Business Administration and to grant to the Secured Claimants post-petition replacement liens as and for adequate protection of the Debtor's use of such cash collateral of the Secured Creditors on the terms set forth herein and (2) setting an interim hearing on this Motion ("Motion").

## II. Summary of Argument

Pursuant to 11 U.S.C. § 363, a debtor may use a lender's cash collateral with their consent or, alternatively, with court approval. To obtain use of cash collateral, a debtor may be required to provide a secured creditor with adequate protection.

Here, Debtor's ability to use cash collateral is vital to the continued operation and, therefore, Debtor has taken steps to ensure that it is able to use cash collateral. For example, Debtor is proposing to make ongoing contractual payments to all secured creditors. In addition, Debtor is continuing to bring in new value so that the overall value is not diminished using cash collateral. Debtor believes that the preservation of the entity as an ongoing concern provides the adequate protection necessary for Debtor to obtain use of the cash collateral.

For these reasons and those set forth below, the Court should authorize Debtor's use of cash collateral.

## III.    Background

### A. Debtor's organizational structure and operations

The Debtor, Viva Libre Restaurant Concepts Inc., does business as the Blue Agave Southwestern Grill restaurant in Yorba Linda, CA, where it has been in business since 1994 as a local favorite known for its Mexican, South American, and Southwestern cuisine. The restaurant also offers a full bar and catering services for events.

The Debtor filed for Chapter 11 bankruptcy protection with an election to proceed under subchapter V on May 1, 2025 due to severe cash flow constraints stemming from repayment of

MOTION FOR ORDER APPROVING BUDGET AND AUTHORIZING USE OF CASH COLLATERAL

pandemic era loans and increased competition from newly established restaurants nearby. In particular, the demands of unsecured creditors have contributed to a rent deficiency of approximately $62,831.85 through May 1, 2025 for Debtor's restaurant's commercial lease.

The restaurant does regular daily service Wednesdays through Sundays and along with catering orders earns approximately $42,000 weekly in gross receipts. Through Chapter 11, Debtor seeks to restructure and reduce its debt obligations, pay back the rent deficiency in full within three years or less, and both modernize and expand its operations and core business to increase revenue.

## B. Debtor's secured creditors

| Priority | Secured Creditor | Collateral | Estimated Balance |
|----------|-----------------|------------|-------------------|
| 1. | US Small Business Administration | All Assets; UCC U210107792733 filed 12/06/2021 | $547,000.00 |

The information above is provided is based on the best estimates of the Debtor and may be subject to change. The secured obligations owed arise from a Covid business loan from the SBA. While other creditors may allege security interests, there is no available assets exceeding the value of the US Small Business Administration's estimated claim.

## IV.    Argument

### A. The Debtor Should Be Authorized to Use Any Cash Collateral of the Lender Pursuant to 11 U.S.C. § 363.

Generally, unless the court orders otherwise, a debtor-in-possession may use, sell, or lease property of the estate in the ordinary course of business without court approval. §363(c)(1). However, "cash collateral" subject to a lien may not be used unless the lienholder consents or the court authorizes the use:

> The trustee [or debtor in possession] may not use, sell or lease cash collateral…. unless:
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

Cash collateral is defined in § 363(a) as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest. . . ."

Here, Debtor requires the emergency use of cash collateral for the next sixty (60) days to meet payroll and expenses to continue its business operations.  The majority of these funds are for continuing restaurant operation expenses and taxes, payroll, and payroll taxes and other miscellaneous payroll related expenses. The anticipated income for this period is $326,000.00 plus cash on hand. A copy of the anticipated average monthly budget for the next sixty (60) days is attached hereto as Exhibit "B" and fully incorporated herein by reference.  As adequate protection for the use of cash collateral, the Debtor shall agree, with Court approval, to grant replacement liens to the US Small Business Administration equal to those held prepetition.

For the reasons set forth below, Debtor should be allowed to use cash collateral.

## 1.  The ongoing contractual payments adequately protect Debtor's secured creditors

In the absence of consent, the court may authorize the debtor's use of cash collateral so long as the use is in accordance with the Bankruptcy Code's provision, including the payment of actual and necessary expenses of operation. *See* 11 U.S.C. § 363(c)(2)(B). *Matter of Plaza Family Partnership*, 95 B.R. 166 (E.D. Cal. 1989); *In re MadCat Two, Inc*., 120 B.R. 990 (Bankr E.D. Ark. 1990).

The court may condition the use of property, including cash collateral, as necessary to provide adequate protection of an entity's interest in such cash collateral. 11 U.S.C. § 363(e); *In re Center Wholesale, Inc*.,788 F.2d 541, 544 (9th Cir. 1986); *In re Sunnymead Shopping Ctr. Co*., 178 BR 809, 814 (9th Cir. B.A.P. 1995).

Debtors have the burden of proof to establish the sufficiency of adequate protection. Section 363(p) clearly delineates the party that bears the burden of proof on the relevant cash collateral issues: "(1) the trustee [or debtor in possession] has the burden of proof on the issue of adequate protection; and (2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p).

1   Therefore, this Court may authorize the Debtor's use of any cash collateral of a secured

2   creditor upon determining that the interests of the secured creditor in the cash collateral will be

3   adequately protected. *In re McCombs Properties VI, Ltd*., 88 B.R. 261 (Bankr. C.D. Cal. 1988). The

4   question of whether a secured party's interest in collateral is adequately protected, by its nature,

5   must be determined on a case-by-case basis. *In re Belco, Inc*., 38 B.R. 525, 527 (Bankr. W.D. Ok.

6   1984).

7      **2.  Legal Requirements to Establish Adequate Protection**

8   Courts require adequate protection to safeguard the creditor against the depreciation in the

9   value of its collateral during the reorganization process. *In re Weinstein*, 227 B.R. 284, 296 (B.A.P.

10  9th Cir. 1998). The interest in property protected under § 363 is limited to the value of the

11  collateral; the adequate protection provisions in the Bankruptcy Code protect a secured creditor

12  only from a potential diminution in the value of that creditor's collateral during the post-petition

13  period. *See United Savings v. Timbers of Inwood Forest,* 484 U.S. 365, 370-372 (1988)

14  ("*Timbers*"); *In re McCombs Properties VI, Ltd*., 88 B.R. 261 (Bankr. C.D. Cal. 1988) ("The

15  analysis of the Supreme Court in *Timbers* is instructive here. The phrase "interest in property" in §

16  363(e) means the value of the collateral. That is the interest that I am required to protect. If that value is

17  likely to diminish during the time of the use, adequate protection must be provided by the Debtor."); *In

18  re Ledgemere Land Corp*., 116 B.R. 338, 343 (Bankr. D.Mass. 1990) (so long as the receivables

19  being collected and used by the debtor are being replaced by sufficient new receivables in which the

20  creditor is granted a security interest, the creditor is adequately protected); *In re Johnson*, 90 B.R.

21  973f, 978 (Bankr. D.Minn. 1988) (secured creditor is not impaired and is not entitled to receive

22  adequate protection payments where value of collateral does not decline); *In re Century Inv. Fund,

23  VII Ltd. P'ship*, 96 B.R. 884, 887 (Bankr. E.D.Wis. 1989) (where value of collateral appears to be

24  stable, secured creditor is not entitled to adequate protection payments); *In re Anderson*, 86 B.R.

25  877, 889 (Bankr. N.D.Ind. 1988) (secured creditor was required to show a necessity for adequate

26  protection by demonstrating a decline in asset value from the petition date); *In re Kessler*, 86 B.R.

27  134, 136 (Bankr. C.D.Ill. 1988) (under *Timbers*, movants are not entitled to adequate protection

28  payments, as there was no showing that property was depreciating in value); *In re Elmore*, 94 B.R.

670, 677 (Bankr. C.D.Cal. 1988), ("[T]he Court finds that the property is not depreciating in value. In consequence, the Court finds that [the secured creditor] is adequately protected by the value of its collateral… The right to receive payments is a simple contract right that supports only a claim in the bankruptcy case. There is no other adequate protection to which [the secured creditor] is entitled under the Bankruptcy Code."); *In re McCombs Properties VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal. 1988) ("The analysis of the Supreme Court in Timbers is instructive here. The phrase "interest in property" in § 363(e) means the value of the collateral. That is the interest that I am required to protect. If that value is likely to diminish during the time of the use, adequate protection must be provided by the Debtor.").

Under the strict value-oriented analysis adopted by the Supreme Court in *Timbers* (and adhered to by the well-reasoned cases cited above), the adequate protection inquiry under Section 363(e) is limited to determining whether the debtor's use of a secured creditor's cash collateral will reduce the value of the creditor's collateral base. If the debtor can establish that the proposed use of the collateral will not cause a decline in the value of the collateral, then court authorization of such use is appropriate.

Indeed, a secured creditor does not have a right to be paid adequate protection payments, post-petition, where no decline in the value of the collateral is either occurring or anticipated. *United Savings v. Timbers of Inwood Forest,* 484 U.S. 365, 377 (1988) ("It is obvious (since §§ 361 and 362(d)(1) do not entitle the secured creditor to immediate payment of the principal of his collateral) that this "realization" is to "result" not at once, but only upon completion of the reorganization. It is then that he must be assured "realization … of the indubitable equivalent" of his collateral.").

The law, then, is clear: no adequate protection payments are required unless there is a decline post-petition in the value of the secured creditor's collateral which actually impairs the creditor's secured claim.

//

//

//

MOTION FOR ORDER APPROVING BUDGET AND AUTHORIZING USE OF CASH COLLATERAL

## B. The Debtor has Satisfied its Adequate Protection Burden

To obtain authorization to use cash collateral, a debtor must provide adequate protection to secured creditors under 11 U.S.C. § 363(e). Here, the Debtor's proposed adequate protection package is more than sufficient to protect the secured creditors' interests for several key reasons:

First, the Debtor is working towards proposing a plan that will allow maintain contractual payments to the US Small Business Administration, pay back the rent deficiency in full within three years or less, and both modernize and expand its operations and core business to increase revenue.

Second, and most importantly, maintaining the Debtor as a going concern provides the greatest protection to secured creditors. The Debtor's true value lies in its continued operations rather than a liquidation of its assets. The Debtor's operations earn regular revenue average approximately $42,000 gross per week. In comparison, the value of Debtor's assets are less than $362,000 which is less than the US Small Business Administration's claim of approximately $547,000. *See* ECF Docket No. 1. A forced shutdown, even temporarily, would cause: Loss of valuable customer relationships, Employee attrition, Deterioration of vendor relationships, Significant diminution in overall enterprise value, Reduced collateral value for secured creditors.

The law is clear that adequate protection payments are only required if there is actual decline in collateral value that impairs the creditor's secured position. See *United Savings v. Timbers of Inwood Forest*, 484 U.S. 365, 370-372 (1988). Here, the Debtor's projections and plans to increase revenue demonstrate that the secured creditors' collateral position will be maintained and potentially enhanced through: Continued contractual payments, Generation of new receivables, Preservation of going concern value, and Positive projected cash flow after initial stabilization period.

Therefore, the Court should find that the secured creditors are adequately protected and authorize the Debtor's use of cash collateral to preserve enterprise value and maximize recovery for all stakeholders.

//

//

//

MOTION FOR ORDER APPROVING BUDGET AND AUTHORIZING USE OF CASH COLLATERAL

## C. The Debtor Should be Authorized to Use Cash Collateral to Enable a Successful Reorganization

In *In re O'Conner*, 808 F.2d 1393 (10th Cir. 1987), the Tenth Circuit Court of Appeals recognized that the ultimate goal of Chapter 11 proceedings is to enhance the prospects of reorganization. In this regard, the Tenth Circuit stated as follows:

> [T]he Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtor to achieve that end…
>
> In order to encourage the Debtor's efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard.

*Id.* at 1397-98; *Accord*, *In re Dynaco Corp.*, 162 B.R. 389, 395 (Bankr. D.N.H. 1993) ("[T]he court will generally permit the business operations to continue, at least to the point of plan formulation, if the debtors make a solid evidentiary showing to support their projections…"); *In re Heatron, Inc.*, 6 B.R. 493, 496 (Bankr. W.D.Mo. 1980) ("At the beginning of the reorganization process the Court must work with less evidence than might be desirable and should resolve issues in favor of the reorganization where the evidence is conflicting.").

Here, a determination to grant to the Debtor use of any cash collateral will help promote the Debtor's operation of the business as a going concern, as it will allow the Debtor to continue, uninterrupted, the normal operations of its business. The Debtor's efforts to successfully reorganize its financial affairs, in turn, will be to the ultimate benefit of the Lender, by preserving and enhancing the value of their alleged secured interests. In *Cann & Saul*, the court found the debtor's prospects for a successful reorganization to be a major factor in determination of adequate protection:

> It is far more significant in the weight of considerations as to whether a creditor is "adequately protected" to analyze debtor's prospects for a successful reorganization in Chapter 11. If these prospects are strong… then the measure of the secured creditor's adequate protection is the probability that the debtor will be able to propose an effective plan.

76 B.R. at 485.

In *Cann & Saul*, the debtor (a steel manufacturer that had been in business for almost a

1 century) had been losing money each year for a period of at least four years prior to the filing of its

2 Chapter 11 petition. However, the court found that the debtor had strong potential for

3 reorganization, given such factors as the debtor's production of high quality product, the debtor's

4 stability and good public image, and the debtor's acceptance of changes necessary for maintaining

5 its labor force. *Id*. at 487-88.

6 　　Here, the Debtor enjoys a good public image. If the Debtor is authorized to use cash

7 collateral, the value of their business enterprises will be preserved, and those enterprise ultimately

8 will provide a source of repayment for creditors. In contrast, if the Debtor is denied the use of cash

9 collateral, then they will be forced to close its business and to cease operations. A cessation of

10 operations, even temporarily, would cause irreparable damage to the Debtor's business in the form

11 of customer defections, employee attrition, lost revenues and loss of goodwill. If the Debtor was

12 permanently prohibited from using cash collateral, then it would be forced to close operations, and

13 its assets then would need to be liquidated, yielding proceeds totaling a fraction of what the Debtor

14 could generate by continuing operations and by reorganizing their financial affairs. In this regard, it

15 is very likely that any liquidation of the Debtor's assets would be significantly less favorable for

16 creditors in this case.

17 　　The Debtor is in the food service business. It is able to utilize collateral in a much for

18 efficient and effective manner thereby likely generating more proceeds then if equipment and

19 inventory was immediately liquidated.

20 　　Therefore, rather than force upon the Debtor and its creditors the unfortunate results

21 associated with a liquidation of the Debtor's assets at this very early stage of the case, the Court

22 should permit the Debtor to use any cash collateral in order to preserve its ability to reorganize. *See*

23 *In re George Ruggiere Chrysler-Plymouth, Inc*. 727 F.2d 1017, 1019 (11th Cir. 1984) ("Without the

24 availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the

25 congressional policy favoring rehabilitation over economic failure would be frustrated."); *Dynaco*,

26 162 B.R. at 396 (finding that the alternative to the debtor's use of cash collateral – forced

27 termination of its businesses – would doom any reorganization and any chance to maximize values for

28 all creditors).

## D. Good Cause Exists for Hearing this Motion on an Emergency Basis.

In recognition of the fact that Section 363(c) of the Bankruptcy Code operates to deprive a debtor of the use of critical operating capital as of the filing of the debtor's Chapter 11 petition, Congress specifically provided in Section 363(c)(3) that a hearing on cash collateral "shall be scheduled in accordance with the needs of the debtor." Accordingly, the Bankruptcy Code expressly anticipates and authorizes expedited hearings on the issue of cash collateral use. See, 11 U.S.C. § 363(c)(3).

Similarly, the Ninth Circuit Court of Appeals has recognized that immediate interim relief may be crucial to the success of a corporate reorganization:

> We realize that 'in certain circumstances, the entire reorganization effort may be thwarted if emergency leave is withheld' and that reorganization under the Bankruptcy Code 'is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations.' It is for this reason that Congress specified that hearings concerning the use of cash collateral 'shall be scheduled in accordance with the needs of the debtor.'

*In re Center Wholesale, Inc.*, 759 F.2d 1440, 1449 n.21 (9th Cir. 1985) (emphasis added) (citations omitted). *See also*, *In re Sullivan Ford Sales*, 2 B.R. 350, 355 (Bankr. D. Me. 1980).

As set forth in the Ho Declaration, the Debtor must have the immediate use of any cash collateral to meet future payroll obligations, to meet the daily costs and expenses of operating its business, to promptly pay its vendors, and to acquire goods and services to keep its business operating. Any delay in the Debtor's ability to meet one or more of the aforementioned operating needs could deprive the Debtor of its ability to successfully reorganize its financial affairs.

## E. The Court Should Schedule a Final Hearing on this Motion as Soon as Possible in Accordance with the Requirements of the Bankruptcy Rules

By this Motion, the Debtor requests that the Court schedule a final hearing on this Motion as soon as possible in accordance with the requirements of the Federal Rules of Bankruptcy Procedure.

Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure provides that the Court may commence a final hearing on this Motion no earlier than fourteen (14) days after service of the Motion. The Debtor need to obtain as promptly as possible approval of the final use of cash

collateral in order to ensure the Debtor's employees and vendors that the Debtor will be able to pay, during the course of this case, its ordinary operating expenses including, without limitation, payroll and the expenses of maintenance and operation of its business. A final hearing on this Motion should be held as soon as possible after the expiration of the fourteen (14) day period provided for by Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure, in order to prevent the substantial damage to the Debtor's business which would result from any loss of support of the Debtor's customers, employees, and vendors caused by any lack of confidence that the Debtor will have the ability to use cash collateral during its case.

## F. The Notice of this Motion Proposed to be Given to Creditors and Other Parties-In-Interest Is Appropriate Under the Facts and Circumstances of the Debtor's Cases.

As of the filing of this Motion, no Subchapter V trustee or Committee has been appointed in the Debtor's Chapter 11, Subchapter V case. In accordance with the provisions of Bankruptcy Rule 4001(b)(1), notice of this Motion has been given via e-mail or overnight mail to the U.S. Trustee, to Debtor's various secured creditors or their counsel, and to the Debtor's twenty largest general unsecured, non-insider creditors.

Because of the exigencies of the Debtor's case and the irreparable harm to the Debtor, the Chapter 11 estate, and all parties-in-interest that may ensue if the relief requested herein is not granted, the Debtor submits that no further notice need be given. No previous motion for the relief sought herein has been made to this Court or to any other court.

//

//

//

# V. Conclusion

Based upon the foregoing, the Debtor respectfully request that this Court enter its order:

1.     Approving budget and Authorizing, on an interim basis pending final hearing on notice to creditors, the Debtor's immediate use of any cash collateral of secured creditors pursuant to the terms and conditions contained in this Motion;

2.     Determining that Debtor's secured creditors are adequately protected;

4.     Setting a hearing on this Motion; and

5.     Granting to the Debtor such other and further relief as the Court may deem just and proper.


DATED:  May 1, 2025                          SHIODA LANGLEY & CHANG LLP



                                             By:  /s/Christopher J.Langley
                                             CHRISTOPHER J. LANGLEY
                                             Attorneys for Debtor-In-Possession,
                                             VIVA LIBRE RESTAURANT CONCEPTS
                                             INC.

MOTION FOR ORDER APPROVING BUDGET AND AUTHORIZING USE OF CASH COLLATERAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit A**

EXHIBITS

# Declaration of George A. Gallardo

I, George A. Gallardo, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      I am the owner of debtor Viva Libre Restaurant Concepts Inc. ("Debtor") and I am authorized to speak on its behalf. I am one of the custodians of the books, records and files of the Debtor that pertain to loans, extensions of credit, and the Debtor's financials. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Debtor on behalf of Debtor, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Debtor's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Debtor by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  Except when based on information and belief, I make this declaration based on facts within my personal knowledge and if called as a witness, could and would testify thereto.

3.      Debtor does business as the Blue Agave Southwestern Grill restaurant in Yorba Linda, CA, where it has been in business since 1994 as a local favorite known for its Mexican, South American, and Southwestern cuisine. The restaurant also offers a full bar and catering services for events.

4.      Historically financially stable, Debtor filed for Chapter 11 bankruptcy protection with an election to proceed under subchapter V on May 1, 2025 due to severe cash flow constraints stemming from repayment of pandemic era loans and increased competition from newly established restaurants nearby.  In particular, the demands of unsecured creditors have contributed to a rent deficiency of approximately $62,831.85 through May 1, 2025 for Debtor's restaurant's commercial lease.

5.      With respect to Debtor's assets including cash collateral, the US Small Business Administration holds an estimated secured claim of $547,000.

6.      The company currently holds assets estimated in an amount less than $362,000 and

1    generates approximately $42,000 of weekly gross revenue.  *See* ECF Docket No. 1.

2        7.      An interruption in Debtor's ability to access cash and operate its business would be

3    devastating, and would likely result in irreparable harm. In light of Debtor's financial difficulties,

4    the only way to ensure that Debtor can continue to operate is through a restructuring to slim down

5    its operations or a sale.

6        8.      I believe that by expanding Debtor's core business, Debtor will be able to increase

7    revenues and catch-up on delinquent rent payments within three years while maintaining payments

8    to the US Small Business Administration.  However, even if that is not the case, preserving the

9    value of the going concern will ultimately benefit the Debtor's creditors.

10       9.      The budget reflects a sixty-day projection of cash flow and expenses before any

11   increase in revenue.  Further revisions to the budget after consultation with the Subchapter V

12   Trustee to be assigned is expected to increase cash flow relief while ensuring the rent delinquency

13   is cured.

14       10.     If Debtor ceases operations, even for just a short period of time, its value would be

15   significantly impaired as its true value is in the operations rather than its assets.

16

17       I declare under the penalty of perjury that the foregoing is true and correct.

18

19       Executed on May 1, 2025 at Yorba Linda, California

20

21       /s/ George A. Gallardo

22       GEORGE A. GALLARDO

23

24

25

26

27

28

16

EXHIBITS    Doc ID: c9f354abb11db71b96beea4c5c77558b1cabc3e5

**Exhibit B**

EXHIBITS

**Exhibit B**

**Estimated monthly budget**

**Cash Flow**

| | |
|---|---|
| Food Sales | $163,000.00 |
| Liquor Sales | $26,500.00 |
| Total Sales | $189,500.00 |

**Cash Out Flow**

| | |
|---|---|
| Occupancy Cost ( Rent & Cams) | $21,416.67 |
| Labor Kitchen  (Front of House) | $70,000.00 |
| Food & Liqour | $46,000.00 |
| Utilities ( Gas, Electricity,Water) | $7,666.67 |
| Insurance , W-Comp  M. Contracts) | $3,000.00 |
| Marketing ,Music, Cable, Phones | $2,000.00 |
| Catering Supplies & Fuel | $2,000.00 |
| Menus, Printing, Flowers & Decorations | $1,000.00 |
| Credit Card Fees,  Bank Charges | $6,500.00 |
| Kitchen Supplies , Clean & Chemicals | $3,500.00 |
| Sales Tax 7.75% | $14,505.33 |
| Office Supplies | $400.00 |
| Delivery Fees | $25.00 |
| Repairs & Maintenance | $2,000.00 |
| Total Expense | $180,013.67 |
| Reserve to Ensure Contined Operation | $9,486.33 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
4158 14th St.
Riverside, CA 92501

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND DEBTOR AND DEBTOR'S-IN-POSSESSION EMERGENCY MOTION FOR ORDER APPROVING BUDGET AND AUTHORIZING USE OF CASH COLLATERAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **5/02/2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Christopher J Langley    chris@slclawoffice.com, john@slclawoffice.com;ShiodaLangleyChangLLP@jubileebk.net**
**Queenie K Ng    queenie.k.ng@usdoj.gov**
**United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **5/02/2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **5/02/2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/02/2025 | John Martinez | /s/ John Martinez |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-8
Case 8:25-bk-11186-TA
Central District of California
Santa Ana
Fri May  2 12:39:36 PDT 2025

Employment Development Dept.
Bankruptcy Group MIC 92E
P.O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section MS: A-340
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Securities & Exchange Commission
444 South Flower St., Suite 900
Los Angeles, CA 90071-2934

Viva Libre Restaurant Concepts Inc.
18601 Yorba Linda Blvd.
Yorba Linda, CA 92886-4136

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

American Express
PO Box Box 981535
El Paso, TX 79998-1535

(p)BIZFUND LLC
ATTN BRIAN SCHECHTER
315 AVENUE U
BROOKLYN NY 11223-3923

Chase Bank
Attn: Bankruptcy Dept.
Po Box 15298
Wilmington, DE 19850-5298

DLP Funding LLC
447 Broadway 2nd Fl.
New York, NY 10013-2562

(p)FUNDING CIRCLE
707 17TH STREET
SUITE 2200
DENVER CO 80202-3404

(p)FUNDING METRICS  LLC
ATTN PAULETTE YIAMBILIS ESQ
FUNDING METRICS LLC
3220 TILLMAN DRIVE SUITE 200
BENSALEM PA 19020-2028

Fundworks LLC
299 South Main Street, Suite 1300
Salt Lake City, UT 84111-2241

George Albert Gallardo
5988 Malta Way
Yorba Linda, CA 92887-6214

Harbor Funding LLC
111 South Wacker Dr 34th Fl.
Chicago, IL 60606-4719

Law Offices of Barak Isaacs
30423 Canwood Street 118
Agoura Hills, CA 91301-4314

Liquidibee 1 LLC
3800 S. Ocean Dr. Ste 226,
Hollywood, FL 33019-2938

NewCo Capital Group LLC
1801 NE 123rd St 421
Miami, FL 33181-2885

(p)NEWITY LLC
ATTN LEGAL DEPARTMENT
1123 W WASHINGTON BLVD 3RD FL
CHICAGO IL 60607-2078

Northeast Bank
One Marina Park Drive Fl 8
Boston, MA 02210-1978

Optimus Property Management LLC
1801 Century Park East 2100
Los Angeles, CA 90067-2323

Orange County Tax Collector
Bankruptcy Unit
PO Box 4515
Santa Ana, CA 92702-4515

Simply Funding LLC
55 Broadway
New York, NY 10006-3041

Sysco Corporation
20701 Currier Rd
Walnut, CA 91789-2904

US Foods
15155 Northam St.
La Mirada, CA 90638-5754

US Small Business Administration
10737 Gateway West #300
El Paso, TX 79935-4910

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Wells Fargo Bank NA
Attn: Bankruptcy
1 Home Campus MAC X2303-01A 3rd Floor
Des Moines, IA 50328-0001

Christopher J Langley
Shioda Langley & Chang LLP
1063 E. Las Tunas Dr.
San Gabriel, CA 91776-1632